UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Debra Thul,

Plaintiff,

v.

Civil No. 00-2181 RHK/SRN
**MEMORANDUM OPINION AND ORDER**

Menard, Inc. d/b/a
Cashway Lumber,

Defendant.

---

Tracey N. Tool and Lori C. Peterson, Peterson Law Office, Minneapolis, Minnesota, for Plaintiff.

Marko J. Mrkonich and Heather C. Sherman, Littler Mendelson, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiff Debra Thul ("Thul") was employed by Defendant Menard, Inc. ("Menard") from May 18, 1999 to April 19, 2000 as a Floor Covering Sales Person. Thul alleges that while employed at Menard she was subjected to sexual harassment and discrimination. (Compl. ¶ 6.) Thul asserts the following claims: (1) sex discrimination / sexual harassment under the MHRA; (2) retaliation / reprisal under the MHRA; (3) negligent infliction of emotional distress; (4) negligence; and (5) Title VII Notice.[1]

[1] Thul's Complaint states that she is filing an administrative charge with the Equal Opportunity Commission and will seek to amend her Complaint to include a Title VII



FILED JAN 02 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JAN 02 2001
DEPUTY CLERK

Menard brought this Motion to Dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6), Federal Rules of Civil Procedure, on the basis that this dispute is subject to mandatory arbitration.

## BACKGROUND

On May 18, 1999, Thul began working for Menard. (Thul Am. Aff. ¶ 6.) On the same day Thul participated in an orientation session. (Id.) During the orientation session Thul signed an Employment Agreement. (Sherman Aff. Ex. A (May 18, 1999, Employment Agreement between Thul and Menard).) The agreement contains an arbitration clause which provides as follows:

> I agree that all problems, claims and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration . . . . Problems, claims or disputes subject to binding arbitration include, but are not limited to: Statutory claims . . . and Non-Statutory claims such as contractual rights, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common laws. These claims shall be resolved by binding arbitration by the American Arbitration Association ("AAA") . . . .

(Id.) Thul contends that the arbitration agreement should not be enforced for the following reasons: (1) the clause lacked consideration; (2) the MHRA precludes compulsory arbitration; (3) the clause is invalid because Thul may be required to pay costs of arbitration if Menard is the "prevailing party"; and (4) equity and public policy

---

claim when she receives a Notice of Right to Sue. (Compl. ¶ 40.)

dictate not enforcing it.

## ANALYSIS

### I. Federal Arbitration Act

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1998). The FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . ." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989) (internal quotation marks omitted). "[Q]uestions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration." Id., 489 U.S. at 475 (citations omitted).

Before a party may be compelled to arbitrate under the FAA, the district court must first determine whether (1) the arbitration agreement between the parties is valid, (2) the dispute falls within the scope of the agreement, and (3) legal constraints, independent of the agreement, prevent the arbitration of this dispute or render the agreement unenforceable as unconscionable. Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1984); Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-

95 (8th Cir. 1994). Whether a particular dispute is arbitrable is a question for the district court to decide. See McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1193-94 (8th Cir. 1997). Thul's arguments in opposition to dismissal encompass only whether the arbitration agreement was valid and whether legal constraints prevent the arbitration of this dispute; she does not contend that her dispute with Menard falls outside the scope of the agreement.

In its evaluation of the arbitration agreement, the Court must apply ordinary principles of Minnesota contract law. First Options v. Kaplan, 514 U.S. 938, 943 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); see also Johnson v. Hubbard Broad., 940 F. Supp. 1447, 1454 (D. Minn. 1996) (Montgomery, J.).

## II. Validity of the Arbitration Agreement between the Parties

### A. Consideration for the Arbitration Agreement

Thul relies on a Seventh Circuit case for the proposition that lack of consideration "dooms" an arbitration provision, even in the employment context. See Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1132 (7th Cir. 1997). In Gibson, the Seventh Circuit held that the employee's arbitration agreement was not enforceable because the employer had not also agreed to arbitrate its disputes. 121 F.3d at 1132. Thus, there was no bargained for exchange. Id. In this case, however, the agreement

provides that Menard must also submit its claims to arbitration. The agreement states that Menard may seek an injunction to prevent Thul from breaching the employment agreement, but once the injunction proceeding is completed, "the claims shall be submitted to final and binding arbitration." (Sherman Aff. Ex. A.) Both parties to the employment agreement in this case are bound to arbitrate their disputes. Moreover, the Seventh Circuit in Gibson was applying Indiana law, which requires that an employer make a specific promise to continue the employee's at-will employment before the employee's continued employment will constitute consideration. See Advanced Copy Prod. Inc. v. Cool, 363 N.E.2d 1070, 1071 (1977). Minnesota law, on the other hand, does not require a specific promise of continued employment by the employer in order for the continued employment to constitute consideration. Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983)

Thul contends, based on Gibson, that her continuing to work at Menard after signing the employment agreement was not sufficient consideration for the agreement.[2]

---

[2] Thul's employment agreement stated "[i]n consideration of my employment, promotion or salary increase by Menard, Inc., . . . and in further consideration of the compensation paid or to be paid to me, I agree as follows . . . ." (Sherman Aff. Ex. A.) Thul began her employment on the same day that she signed the employment agreement. (Id.; Am. Thul Aff. ¶ 6.) Although Thul contends that she accepted the position a week before she started working, the proximity in time between the acceptance of the position and the signing of the employment agreement may be sufficient to find that her initial employment with Menard was the consideration for the employment agreement. Because the Court is persuaded, however, that Thul's continued employment at Menard for a year after signing the agreement is sufficient consideration it need not decide this issue.

Under Minnesota law, however, when a change of employment is offered to an employee "the employee's retention of employment constitutes acceptance of the offer . . . . [B]y continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer." Pine River, 333 N.W.2d at 627; Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876, 883 (Minn. 1986). There is no dispute that Thul signed the agreement containing the arbitration clause. Thus, Thul was aware of the terms of her continued employment. By staying at Menard with the knowledge of the arbitration agreement, Thul accepted the offer and provided the necessary consideration to bind the parties. Accordingly, the Court concludes that the arbitration agreement was supported by consideration and is valid.

### B. Costs of Arbitration

Thul posits that the arbitration agreement is invalid because it purports that Thul must pay costs of arbitration. The clause states

> I agree that the prevailing party will be entitled to recover the reasonable attorney's fees and costs incurred by such party in the course of prosecuting or defending any lawsuit or arbitration proceeding brought under the terms of this Agreement.

(Sherman Aff. Ex. A.) Thul relies on a Tenth Circuit case for the assertion that arbitration is not fair, and accordingly, unenforceable, where the employee is required to pay some of the costs of arbitration. See Shankle v. B-G Maint. Mgmt., 163 F.3d 1230, 1233 (10th Cir. 1999) (finding an arbitration agreement unenforceable where a plaintiff

was required to pay one-half the cost of arbitration). Although the Eighth Circuit has not addressed this issue, other courts have limited the holding in Shankle. One court found that, because the plaintiff failed to provide any evidence that the cost of arbitration would be prohibitively expensive for her, it could not find as a matter of law that the arbitration agreement was unenforceable. McCaskill v. SCI Mgmt. Corp. Serv., Inc., No. 00 C 1543, 2000 WL 875396, at *3 (N.D. Ill. June 22, 2000) (distinguishing Shankle as a case where the plaintiff provided sufficient evidence that the cost of arbitration would be prohibitively expensive).[3]

The McCaskill court was also persuaded that the arbitration agreement should be enforced because it adopted the AAA rules which contain safeguards protecting plaintiffs from inordinately high arbitration costs (i.e., that the costs may be reduced in cases of extreme hardship). McCaskill, 2000 WL 875396, at *4. Similarly, the arbitration agreement in this case provides that AAA rules apply to the arbitration. (Sherman Aff. Ex. A.) Based on the safeguards contained in the AAA rules and Thul's failure to provide any evidence that the cost of arbitration would be prohibitively expensive for her, the

---

[3] In Fuller v. Pep Boys–Manny, Moe & Jack, Inc., 88 F. Supp. 2d 1158 (D.C. Co. 2000), the court analyzed a similar case to Shankle and found the requirement that the employee share the cost of arbitration unenforceable. However, instead of invalidating the arbitration agreement, the court held that, because the agreement had a savings clause, the requirement that the employee pay costs of arbitration should be severed. Fuller, 88 F. Supp. 2d at 1162. Likewise, the employment agreement in this case has a savings clause. (Sherman Aff. Ex. A.) Since Thul has failed to allege that the cost of arbitration would be prohibitive, however, the Court need not determine whether to sever the clause.

Court concludes that the cost of arbitration provision will not invalidate the agreement.

## III. Legal Constraints that Prevent Arbitration

### A. Compulsory Arbitration under the MHRA

Thul argues that the FAA does not apply to this situation because her employment did not involve interstate commerce. (Pl's Opp'n Mem. at 6.) Thul further argues that without the FAA's application, the MHRA governs this case, and the MHRA does not allow compulsory arbitration. (Id. (citing Correll v. Distinctive Dental Serv., P.A., 607 N.W.2d 440, 444-45 (Minn. 2000)); see also Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 803-04 (Minn. 1995) (holding that the FAA preempts the MHRA). The only issue before the Court then is whether Thul's employment "involved commerce" as used in 9 U.S.C. § 2.

The term "involving commerce" in § 2 is to be interpreted broadly and is the functional equivalent of "affecting commerce." Allied Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273 (1995) (interpreting 9 U.S.C. § 2)). Commerce reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce. See Fairchild & Co., Inc. v. Richmond, F. & P. R. Co., 516 F. Supp. 1305, 1308 (D.C.D.C. 1981). According to Thul, the FAA does not apply in this case because as an employee of Menard she worked in a single store, served only local customers, and had no duties involving interstate commerce. Menard, however, is a large national corporation which sells its products in interstate commerce. Menard's principal

place of business is in Wisconsin, and Thul was employed at a store in St. Paul, Minnesota. Interpreting the term "involving commerce" broadly, it is evident that Thul's employment agreement with Menard is a contract that involves or affects interstate commerce. Therefore, the Court concludes that the FAA applies to this case, and that the MHRA's prohibition on compulsory arbitration is preempted by the FAA.

**B. Equity and Public Policy of Enforcing Arbitration Agreement**

Thul cites to section 2 of the FAA, which states that an agreement to arbitrate can be revoked "upon such grounds as exist at law or in equity." 9 U.S.C. § 2. Thul asserts that the "Defendant coerced [her] to sign" the agreement, and that she was not given time to read the agreement before signing it. Failure to read or understand the language of a contract, however, is not a defense to the enforcement of the contract under Minnesota law. See Hubbard, 940 F. Supp. at 1454. Thul also fails to provide any evidence that she was coerced into signing the agreement. Thul further argues that mandatory arbitration is inherently unequal.

The United States Supreme Court and the Minnesota Court of Appeals have held that mandatory arbitration agreements are enforceable in the employment context. See e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); Johnson v. Piper Jaffray, Inc., 515 N.W.2d 752, 753 (Minn. Ct. App. 1994) (stating that Minnesota public policy favors arbitration as an inexpensive alternative to resolve disputes). Thul's argument that arbitration is inherently unequal is not supported by any authority and is

contrary to Eighth Circuit and Minnesota law.[4] Consequently, the Court concludes that equity and public policy do not preclude the enforcement of Thul's agreement to arbitrate.

The arbitration agreement between the parties is valid, this dispute falls within the scope of the agreement, and there is no legal constraints, independent of the agreement, that would prevent the arbitration of this dispute or render the agreement unenforceable as unconscionable. Therefore, the Court finds that the mandatory arbitration agreement shall be enforced.

Because the Court concludes that all of Thul's claims must be arbitrated, no issue remains before the Court. Any post-arbitration remedies sought by the parties will not entail reconsideration of the matters decided herein. Accordingly, the Court will not retain jurisdiction pending the completion of arbitration and will, therefore, grant Menard's Motion to Dismiss. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161,

---

[4] The Court notes that in Circuit City Stores, Inc. v. Adams, 194 F.3d 1070 (9th Cir. 1999) *petition for cert. granted*, U.S., No. 99-1379 (argued 11/6/00), the Ninth Circuit held that employment contracts were exempted from the FAA by 9 U.S.C. § 1. Section 1 provides for the exclusion from FAA coverage of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 2. The Ninth Circuit held that the phrase "any other class of workers engaged in . . . interstate commerce" should be read broadly to exclude all employment contracts. Every other federal circuit court has held that the term should instead be read narrowly to include only the employment contracts of workers who are actually engaged in interstate commerce, i.e., transportation workers, not merely "involved" in interstate commerce, i.e., Thul's position at Menard. In Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 835 (8th Cir. 1997), the Eighth Circuit held that section 1 applies only to contracts of employment for those classes of employees that are engaged directly in the movement of goods or within the flow of interstate commerce. This Court is bound by, and agrees with, the Eighth Circuit's holding in Patterson.

1164 (5th Cir. 1992) (noting that the "weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration").

## CONCLUSION

For the foregoing reasons, and based upon all of the files, records, and proceedings herein, **IT IS ORDERED** that Menard's Motion to Dismiss (Doc. No. 3) is **GRANTED** and Thul's claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

January 2, 2000

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 0 2 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*